UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JACQUELINE CEPEDA,

Plaintiff, Case No.: 14-CV-2619

-against-

THE LEVO LEAGUE, and individually and jointly, NICHOLAS FLANDERS and CAROLINE GHOSN,

Defendants.
-----------------------------------------------------------X

# CONFIDENTIAL SETTLEMENT, RELEASE AND COVENANT NOT TO SUE AGREEMENT

This Settlement, Release and Covenant Not to Sue Agreement (the "Agreement") is made by and between THE LEVO LEAGUE ("Levo"), NICHOLAS FLANDERS ("Mr. Flanders"), and CAROLINE GHOSN ("Ms. Ghosn"), (collectively "Defendants") and JACQUELINE CEPEDA ("Ms. Cepeda" or "Plaintiff") and her attorney, Laurie Morrison, Esq. ("Plaintiff's Counsel"). Levo, Mr. Flanders, Ms. Ghosn, and Ms. Cepeda are referred to collectively herein as the "Parties".

**WHEREAS**, Ms. Cepeda provided services to Levo for the period of on or about July 5, 2012 through February 15, 2013;

**WHEREAS**, on or about April 14, 2014, Ms. Cepeda filed a Complaint in the United States District Court, Southern District of New York, Case Number 14-cv-02619 (the "Complaint") against Defendants, alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*; Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e *et seq.*; the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*; the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*; the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*; the New York Labor Laws Art. 19 § 650 *et seq.*; and the N.Y. Lab. Law § 215 *et seq.*;

**WHEREAS**, on or about July 31, 2014, an Answer was served on behalf of Defendants denying the substantive allegations of the Complaint;

**WHEREAS**, on July 6, 2015, the Parties agreed in Court to resolve and forever settle the Complaint and any action, charge, complaint, claim, grievance, dispute or other potential action of any kind whatsoever that Plaintiff may have for the purposes of avoiding the expense and inconvenience of pursuing and defending same;

**WHEREAS**, the "Parties" have had the opportunity to consult with their respective attorneys prior to executing this Agreement, and have had an adequate opportunity within which to consider this Agreement;

**WHEREAS**, Plaintiff acknowledges and agrees that the payment of the Settlement Payment (as hereinafter defined) to them by Levo is sufficient consideration for her



JC

agreement to knowingly and voluntarily dismiss, release, withdraw, and waive the Complaint and all complaints, charges, grievances, claims, arbitrations, administrative actions and civil actions or proceedings of any kind by or on behalf of herself against Defendants and the Released Parties (as hereinafter defined) including, but not limited to, claims for attorneys' fees and costs, and is conditioned upon acceptance by Plaintiff of the terms of this Agreement;

**NOW THEREFORE**, in consideration of the conditions and mutual covenants set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties hereto, the Parties warrant and agree as follows:

1. Nothing provided in this Agreement shall constitute an admission by Defendants or on behalf of any of the Released Parties (as hereafter defined) of any liability wrongdoing or violation of any kind including of any law, rule, regulation, public policy, or contractual provision.

## SETTLEMENT PAYMENT

2. In full and complete settlement and final satisfaction of any and all allegations, obligations and claims which Plaintiff has, had, or may have against Defendants, and in exchange for Plaintiff's promises contained in this Agreement, including but not limited to the release of claims and covenant not to sue by Plaintiff as set forth below, Levo shall provide Plaintiff on the dates set forth below with the following Settlement Payment ("Settlement Payment") to which Plaintiff would not otherwise be entitled:

a. The Parties agree the Settlement Payment shall be the gross total sum of Sixty Thousand Dollars and no cents ($60,000.00), in four (4) separate installments, on dates set forth below after Defendants' counsel receives (i) the original executed form of this Agreement signed by Ms. Cepeda; (ii) the stipulation of dismissal with prejudice signed by Plaintiff's counsel (attached hereto as Exhibit A); and (iii) completed W-9 forms for both Ms. Cepeda and her counsel. ~~The settlement payments for Ms. Cepeda will be delivered, via Federal Express, Next Day Delivery, signature required to Ms. Cepeda's home address: 300 West 128th Street, Apt #701, NYC, NY 10027. The settlement payments for Ms. Cepeda's attorney will be delivered, via Federal Express, Next Day Delivery, signature required to Laurie E. Morrison, Esq. at the Law Office of Laurie E. Morrison, 44 Fairway Street, Bloomfield, New Jersey 07003, as follows:~~

Settlement payments, subject to the schedule below, shall be sent within three (3) business days after ECF notification of Court approval of this settlement.

(1) the first payment will be made, on or before October ~~16~~ 23, 2015, by one check in the amount of Five Thousand Nine Hundred Ninety Dollars and no cents ($5,990.00) payable to "Jacqueline Cepeda", for emotional distress damages, subject to IRS Form 1099; one check in the amount of Three Thousand Dollars ($3,000.00) and no cents, for lost wages, subject to IRS Form W-2; and one check in the amount of Six Thousand Ten Dollars and no cents ($6,010.00) payable to the "Law Office of Laurie E. Morrison as attorney for Ms. Cepeda", as and for attorneys' fees subject to IRS Form 1099;

(2) the second payment will be made, on or before ~~October 23~~ October 30, 2015, by one check in the amount of One Thousand Five Hundred Dollars and no cents ($1,500.00) payable to "Jacqueline Cepeda", for emotional distress damages,



JC

subject to IRS Form 1099; one check in the amount of One Thousand Five Hundred Dollars ($1,500.00) and no cents, for lost wages, subject to IRS Form W-2; and one check in the amount of Two Thousand Dollars and no cents ($2,000.00) payable to the "Law Office of Laurie E. Morrison as attorney for Ms. Cepeda", as and for attorneys' fees subject to IRS Form 1099;

(3) the third payment will be made, on or before November ~~1~~ 6, 2015, by one check in the amount of Three Thousand Dollars and no cents ($3,000.00) payable to "Jacqueline Cepeda", for emotional distress damages, subject to IRS Form 1099; one check in the amount of Three Thousand Dollars ($3,000.00) and no cents, for lost wages, subject to IRS Form W-2; and one check in the amount of Four Thousand Dollars and no cents ($4,000.00) payable to the "Law Office of Laurie E. Morrison as attorney for Ms. Cepeda", as and for attorneys' fees subject to IRS Form 1099; and

(4) the fourth payment will be made, on or before December 1, 2015, by one check in the amount of Eight Thousand Dollars and no cents ($8,000.00) payable to "Jacqueline Cepeda", for emotional distress damages, subject to IRS Form 1099; one check in the amount of Ten Thousand Dollars ($10,000.00) and no cents, for lost wages, subject to IRS Form W-2; and one check in the amount of Twelve Thousand Dollars and no cents ($12,000.00) payable to the "Law Office of Laurie E. Morrison as attorney for Ms. Cepeda", as and for attorneys' fees subject to IRS Form 1099.

b. Defendants through CFO John McCarthy (or former CFO Nicholas Flanders) (as identified with contact information in letter from Defendants' counsel, dated October 4, 2015) agree to cooperate with any inquiries from the IRS regarding Ms. Cepeda.

c. Plaintiff acknowledges that she is owed no other amounts from Defendants, and understands and agrees that the Settlement Payment will not be paid unless she executes this Agreement.

d. Plaintiff understands and acknowledges that the Settlement Payment herein is inclusive of all of her claims and also resolves and settles any claims Plaintiff, or any of her attorneys may have for attorneys' fees, costs, fines, penalties, or interest in connection with the claims which have been resolved and/or released by this Agreement.

e. Plaintiff also understands and agrees that the Settlement Payment shall be in lieu of any and all other amounts to which Plaintiff might be entitled from Defendants and/or any other company, organization or entity owned, invested, held and/or operated by Defendants, including but not limited to investors and owners of Levo and/or the corporate entities and their affiliates that own and operate Levo and any affiliates.

3. Plaintiff understands and agrees that she has been provided with a reasonable amount of time to review and execute this Agreement.

**RELEASE BY MS. CEPEDA**

4. In consideration for the foregoing, Ms. Cepeda, on behalf of herself and her dependents, heirs, executors, administrators, legal and/or personal representatives, successors, assigns, and agents, does hereby knowingly, voluntarily, unconditionally and irrevocably release and forever discharge Defendants, Amanda Pouchot, Levo and/or each and every one of their respective past, present and future predecessors, successors, parents, affiliates, subsidiaries, branches, partners, shareholders, members, investors, officers, directors, employees, attorneys, insurers and agents, as well as their heirs, executors, administrators, insurers, successors and assigns, wherever located including, but not limited to, The Levo League Corporation (hereinafter collectively the "Released Parties") from any and all claims, known and unknown, from the beginning of the world until Ms. Cepeda executes this Agreement, including, but not limited to:

a. Any allegation, claim or violation that arises out of Ms. Cepeda's employment or affiliation with Defendants, any agreement they or any union has, had or they claim they or any union to have had with Defendants with regard to Ms. Cepeda, any disability, pension, profit sharing, health and welfare or other benefit plan she has or had with Defendants, or the payment of wages;

b. Any allegation, claim or violation arising under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, Sections 1981 through 1988 of Title 42 of the United States Code, the Fair Labor Standards Act, the Immigration Reform and Control Act, the Fair Credit Reporting Act, the Occupational Safety and Health Act, the Sarbanes-Oxley Act of 2002, the Equal Pay Act, the Americans with Disabilities Act, the Family and Medical Leave Act, the Worker Adjustment Retraining and Notification Act, the False Claims Act, the Employee Retirement Income Security Act of 1974, the Federal Fair Labor Standards Act, the National Labor Relations Act, the Labor Management Relations Act (including but not limited to claims for breach of duty of representation), the Age Discrimination in Employment Act of 1967 and the Older Workers Benefit Protection Act, all as amended, any applicable Executive Order Programs, or their state or local counterparts;

c. Any allegation, claim or violation arising under New York State and New York City law, rules and regulations, including but not limited to the New York Labor Law; New York State Human Rights Law, New York State Executive Law (including its Human Rights Law), New York City Human Rights Law and the New York City Administrative Code or their federal or local counterparts;

d. Any allegation, claim or violation arising under any other federal, state, city or local civil, employment, health care or human rights law or any other local, state or federal law, rule, regulation or ordinance;

e. Any allegation or claim for retaliation, wrongful discharge, breach of contract, infliction of emotional distress, fraud, interference with contract or business opportunities, public policy, tort, common law, defamation, whistle blowing or arising under any public policy, contract (including but not limited to, any collective bargaining agreement) tort, or common law;

f. Any allegation, claim or violation arising under any policies, practices or procedures of Defendants;

g. Any claim alleged or which was or could have been alleged in the Complaint; and

h. Any claim for costs, fees or other expenses, including attorneys' fees, incurred in these matters.

5. Plaintiff intends hereby expressly to waive and relinquish, to the fullest extent permitted by law, all claims she may have against any or all of the Released Parties, whether or not known or suspected to exist in her favor at the time of her execution of this Agreement. Plaintiff further acknowledges that she is aware that she hereafter may discover facts in addition to or different from those which she now knows or believe to be true with respect to the subject matter of this Agreement, but it is her intention to, and they do fully, finally and forever settle and release any and all claims against the Released Parties in any forum whatsoever, relating in any way to the claims being released herein, whether known or unknown, suspected or unsuspected, which now exist, may hereafter exist, or heretofore have existed, and without regard to the subsequent discovery or existence of such different additional facts.

6. Plaintiff knowingly, intentionally and voluntarily releases and discharges Released Parties not only from any and all claims which she could make on her own behalf, but she also specifically waives any right to become, and promises not to become, a member of any class (including but not limited to a collective action class) in any proceeding or case in which a claim or claims against any or all of the Released Parties may arise, in whole or in part, from any event which occurred prior to her execution of this Agreement. It is understood that if she, by no action of her own, becomes a mandatory member of any class from which she cannot opt out by operation of law or order of court, such mandatory class membership will not constitute a breach of this Agreement; however in such event she waives her right to any recovery as a result of such action. Furthermore, in such event or in the event that Plaintiff unintentionally remains a member of a class whether or not she could have opted out, and she receives a recovery as a result of being a class member, she will return the amount of that recovery to the applicable Released Parties within 30 days, or the applicable Released Parties at its or their election, may apply the amount of such recovery to any outstanding balance due to Plaintiff.

7. Plaintiff agrees that she will not apply for employment at any company, organization, and/or entity owned by Defendants, or in which Defendants hold an interest or position, and Released Parties. Further, Defendants are under no obligation to rehire and/or retain the employment of Plaintiff, and any action taken by Defendants and/or Released Parties with respect to the their refusal to rehire and/or retain Plaintiff's services shall not be construed as evidence of any retaliatory and/or discriminatory action.

8. Nothing in this Agreement prohibits or prevents Plaintiff from filing a charge or participating, testifying, or assisting in any investigation, hearing, or other proceeding before any federal, state or local government agency. However, to the maximum extent permitted by law, Plaintiff agrees that if such an administrative claim is made, Plaintiff shall not be entitled to recover any individual monetary relief or other individual remedies.

9. Simultaneous with the delivery of an executed copy of this Agreement to counsel for Defendants, Plaintiff shall also deliver to Defendants' counsel one copy of the Stipulation of Dismissal with Prejudice signed by Plaintiff's attorney, in the form annexed hereto as Exhibit A. Counsel for Defendants may file said stipulation with the Court immediately. Plaintiff agrees to sign any other documents that may become necessary to withdraw the Complaint with prejudice. The District Court shall retain jurisdiction only to enforce the parties' settlement.

## CONFIDENTIALITY

10. Plaintiff agrees to keep the underlying facts of the Complaint, the Parties' negotiations and the terms and conditions of this Agreement confidential and not to disclose any information regarding the terms of this Agreement to anyone, other than their attorneys and financial/tax advisors, except to the extent required by law, legal process, subpoena or lawful court order. Plaintiff agrees not to publicize, or cause to be publicized, the terms and condition of this Agreement. To the extent such disclosure is made, Plaintiff further agrees to immediately instruct their attorney and/or financial/tax consultant not to disclose the existence or terms and conditions of this Agreement to anyone. If questioned, Plaintiff may only state that the matter has been resolved; provided further that if disclosure is sought by subpoena or demand for a judicial order or other legal process, Plaintiff shall provide prompt written notice thereof to the other Defendants, and copies of all papers seeking and all orders compelling such disclosure to Defendants as soon as practicable but in any event, no later than the date such disclosure is required to be made and prior to disclosing any of the terms and conditions of this Agreement, so that Defendants may seek to prevent disclosure.

11. Likewise, Nicholas Flanders, Caroline Ghosn and officers of Levo League agree to keep the Parties' negotiations and the terms and conditions of this Agreement confidential and not to disclose any information regarding the terms of this Agreement to anyone, other than their attorneys, financial/tax advisors, corporate financial personnel, except to the extent required by law, legal process, subpoena or lawful court order. Defendants agree not to publicize, or cause to be publicized, the terms and condition of this Agreement. To the extent such disclosure is made, Nicholas Flanders, Caroline Ghosn and officers of Levo League further agree to immediately instruct their attorney and/or financial/tax consultant not to disclose the existence or terms and conditions of this Agreement to anyone. If questioned, Nicholas Flanders, Caroline Ghosn and officers of Levo League may only state that the matter has been resolved; provided further that if disclosure is sought by subpoena or demand for a judicial order or other legal process, Nicholas Flanders, Caroline Ghosn and officers of Levo League shall provide prompt written notice thereof to Plaintiff, and copies of all papers seeking and all orders compelling such disclosure to Plaintiff as soon as practicable but in any event, no later than the date such disclosure is required to be made and prior to disclosing any of the terms and conditions of this Agreement, so that Plaintiff may seek to prevent disclosure.

## NON-DISPARAGEMENT

12. Ms. Cepeda agrees that she will not make or cause to be made any negative, adverse, disparaging or derogatory communication, whether written or oral, concerning any of the Releasees to any other person or entity. Similarly, Ms. Ghosn, Mr. Flanders, their designees, and the officers of Levo League will not make or cause to be made any negative, adverse, disparaging or derogatory

communication, whether written or oral, concerning Ms. Cepeda. Nothing contained herein, however, shall prohibit any party from cooperating with or providing information to the EEOC or other governmental authority. Further, nothing in this paragraph shall prohibit any party from properly and truthfully responding to a valid subpoena or other compulsory legal process, pursuant to paragraph 10. Ms. Cepeda agrees to direct all inquiries by third-parties regarding her employment with Levo to Ms. Flanders, or his successor. Mr. Flanders, or his successor, shall provide only Ms. Cepeda's dates of employment and positions held to any third parties making inquiries regarding Ms. Cepeda.

## NO LIENS, HOLD HARMLESS

13. This settlement is based upon a good faith determination of the Parties to resolve a disputed claim. The Parties have not shifted responsibility of medical treatment to Medicare in contravention of 42 U.S.C. Sec. 1395y(b). The Parties resolved this matter in compliance with both state and federal law. The Parties made every effort to adequately protect Medicare's interest and incorporate such into the settlement terms.

14. Plaintiff warrants that Plaintiff is not a Medicare beneficiary as of the date of this release. Because Plaintiff is not a Medicare recipient as of the date of this release, no conditional payments have been made by Medicare.

15. Plaintiff represents that Plaintiff is not aware of any liens or claims applicable to the proceeds of the settlement. Should any liens arise, they are the sole responsibility of Plaintiff.

16. Plaintiff will defend, indemnify and hold harmless the Released Parties, Defendants, and Defendants' attorneys, Martin Clearwater & Bell LLP, from any and all claims or liens or actions of any nature, Medicare conditional payments and rights to payment, known or unknown, including, but not limited to, the cost of defending any litigation and/or indemnification payment that may arise from said litigation, or any action whatsoever arising from the settlement or asserted against the settlement proceeds. If any governmental entity, or anyone acting on behalf of any governmental entity, seeks damages including multiple damages from a Released Party relating to payment by such governmental entity, or anyone acting on behalf of such governmental entity, relating to Plaintiff's alleged damages, claims or lawsuit, Plaintiff will defend and indemnify such Released Party, and hold such Released Party harmless from any and all such damages, claims, liens, Medicare conditional payments and rights to payment, including any attorneys' fees sought by such entities..

17. Plaintiff will have the sole responsibility to satisfy any lien or claim asserted against the settlement proceeds or arising from the settlement.

## GENERAL PROVISIONS

18. Plaintiff has not relied upon any representation by Defendants or its attorneys on the subject of taxes related to the settlement payment. Plaintiff shall be solely responsible for any and all such taxes which may be due as a result of her receipt of such payments. Plaintiff further agrees to accept full, complete, sole and entire responsibility for any tax liability, withholding liability, interest or penalty that may be assessed against or incurred by the Parties as a result of

not withholding taxes on the monies paid pursuant to this Agreement and to fully indemnify and hold Defendants harmless against such liability. If any Party to this Agreement receives notice from any taxing authorities regarding the payment hereunder, they will provide the other Parties with a copy of such notice, within a reasonable period, and Plaintiff shall address any requests made by such taxing authority. Plaintiff understands that, in the event that Defendants are required to enforce the terms of this indemnification and hold harmless provision, Plaintiff will reimburse such party for its reasonable attorneys' fees and costs associated with such enforcement.

19. The provisions of this Agreement shall be deemed severable and the invalidity or unenforceability of any provision shall not affect the validity and enforceability of the other provisions hereof

20. This Agreement may be executed in one or more counterparts, each of which will be considered an original instrument and all of which together will be considered one and the same agreement.

21. This Agreement shall be governed by the laws of the State of New York. By entering into this Agreement, the Parties hereby submit to the jurisdiction of Magistrate Judge Netburn in the Southern District of New York to resolve any dispute hereunder.

22. All Parties to this Agreement had an opportunity to review this Agreement and obtain independent legal counsel of their own choosing to review same.

23. Attorneys' Fees. In the event it becomes necessary for any party to bring an action to enforce any terms, covenants, or conditions of this Agreement, the prevailing party shall be entitled to recover its costs and expenses from the other party, including, without limitation, reasonable attorneys' fees.

24. Late Payment. In the event that the Releasees fail to make the settlement payments in a timely manner pursuant to Paragraph 2(A)(1) through (4) of this Settlement Agreement, Plaintiff may follow the procedure set forth in the Confession of Judgment, attached hereto as Exhibit B.

**IN WITNESS WHEREOF**, this Confidential Settlement, Release and Covenant Not to Sue Agreement has been executed and delivered as follows:

Jacqueline Cepeda Date 10-9-15

**ACKNOWLEDGEMENT OF JACQUELINE CEPEDA**

STATE OF NEW YORK )

) s.s.:

COUNTY OF Bronx )

I certify that on 9th October 2015, before me personally came Jacqueline Cepeda and acknowledged under oath, to my satisfaction, that she is the person named in and who personally signed this Confidential Settlement, Release and Covenant Not to Sue Agreement and he signed, sealed and delivered this document as his act and deed.

Notary Public

CARIDAD MORALES
Notary Public - State of New York
NO. 01MO6305911
Qualified in Bronx County
My Commission Expires Jun 2, 2018

The Levo League Corporation

By: ______________________
Caroline Ghosn
Chief Executive Officer

10/28/2015
Date

Sworn to before me this
28 day of October, 2015

Sourichanh Chanthyasack
Notary Public

SOURICHANH CHANTHYASACK
Commission # 2051630
Notary Public - California
Marin County
My Comm. Expires Dec 13, 2017

______________________
Caroline Ghosn, individually

10/28/2015
Date

Sworn to before me this
28 day of October, 2015

Sourichanh Chanthyasack
Notary Public

SOURICHANH CHANTHYASACK
Commission # 2051630
Notary Public - California
Marin County
My Comm. Expires Dec 13, 2017

______________________
Nicholas Flanders, individually

10/28/2015
Date

Sworn to before me this
28 day of October, 2015

Sourichanh Chanthyasack
Notary Public

SOURICHANH CHANTHYASACK
Commission # 2051630
Notary Public - California
Marin County
My Comm. Expires Dec 13, 2017

**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
JACQUELINE CEPEDA,

Plaintiff, Case No.: 14-CV-2659

-against-

THE LEVO LEAGUE, and individually and jointly, NICHOLAS FLANDERS and CAROLINE GHOSN,

Defendants.
------------------------------------------------------------X

**STIPULATION OF DISMISSAL WITH PREJUDICE**

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, the attorneys of record for the parties to the above entitled action, that the above action is hereby dismissed as to all defendants with prejudice without attorneys' fees or costs to any party as against the other. The court shall retain jurisdiction only to enforce the parties' settlement agreement.

IT IS FURTHER HEREBY STIPULATED AND AGREED that this stipulation may be filed with the United States District Court, Eastern District of New York, without further notice.

SO STIPULATED:

Law Office of Laurie E. Morrison
*Attorneys for Plaintiff*
30 Broad Street, 35th Floor
New York, New York 10004

By: ______________
Laurie E. Morrison, Esq.

Dated: 10/12/15

Martin Clearwater & Bell LLP
*Attorneys for Defendants*
220 East 42nd Street
New York, New York 10017

By: ______________
Adam G. Guttell, Esq.

Dated: 10/28/15

SO ORDERED: ______________

DATE: ______________

[illegible]

**EXHIBIT B**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X

JACQUELINE CEPEDA,

Plaintiff,

-against-

THE LEVO LEAGUE, and individually and jointly, NICHOLAS FLANDERS and CAROLINE GHOSN,

Defendants.

-------------------------------------------------------------------X

**AFFIDAVIT FOR CONFESSION OF JUDGMENT**

Case No.: 14-CV-2619

STATE OF CALIFORNIA )
) ss:
COUNTY OF _______ )

CAROLINE GHOSN, being duly sworn, deposes and states:

1. I am the Chief Executive Officer of THE LEVO LEAGUE (hereinafter, "LEVO"), one of the Defendants in the above-entitled action.

2. I am duly authorized to make this Affidavit on behalf of LEVO and myself, as an individually named Defendant.

3. LEVO is a domestic corporation duly organized and existing pursuant to the laws of the State of New York, with a principal place of business at 1 Union Square West, New York, New York 10003.

4. I, CAROLINE GHOSN hereby confesse judgment, on behalf of myself and LEVO, for a debt justly to become due to Plaintiff JACQUELINE CEPEDA (hereinafter "Plaintiff") in the total sum of Sixty Thousand Dollars ($60,000.00) (hereinafter, the "Debt") and: (i) in the case of an Event of Default (as defined in paragraph 11 herein), LEVO and I

hereby authorize Plaintiff to file this Affidavit for Confession of Judgment and enter judgment against LEVO and me up to the entire remaining amount of the Debt, which shall not include any payments previously paid; or (ii) in the case of an Automatic Event of Default (as defined in paragraph 12 herein), LEVO and I hereby authorize Plaintiff to file this Affidavit for Confession of Judgment and enter judgment against LEVO and me up to the entire remaining amount of the Debt, which shall not include any payments previously paid.

5. Plaintiff has agreed not to file this Affidavit for Confession of Judgment and/or enter judgment against LEVO and me unless there is an Event of Default or an Automatic Event of Default, as defined herein.

6. This Affidavit for Confession of Judgment is made in order to induce Plaintiff to settle this action and to provide security in connection with the settlement between Plaintiff and Defendants relating to her claims detailed in a Complaint in the United States District Court, Southern District of New York, Case Number 14-cv-02619 (the "Complaint") against Defendants LEVO, NICHOLAS FLANDERS, and CAROLINE GHOSN (collectively referred to herein as "Defendants"), alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.; Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e *et seq*.; the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq*.; the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq*.; the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*.; the New York Labor Laws Art. 19 § 650 *et seq*.; and the N.Y. Lab. Law § 215 *et seq*.

7. On or about July 6, 2015, Plaintiff agreed to settle this action as against the Defendants for the total sum of Sixty Thousand Dollars ($60,000.00) to be paid by LEVO on behalf of all Defendants as set forth in paragraph 9 herein.

8. The settlement, as set forth in the Confidential Settlement, Release and Covenant Not to Sue Agreement (the "Agreement") shall be paid as follows: the amount of Sixty Thousand Dollars ($60,000.00) will be paid by LEVO in a total of the four (4) following separate payments: (i) Fifteen Thousand Dollars and no cents ($15,000.00); (ii) Five Thousand Dollar and no cents ($5,000.00); (iii) Ten Thousand Dollars and no cents ($10,000.00); and (iii) Thirty Thousand Dollars and no cents ($30,000.00) in the amounts and on the dates set forth in paragraph 9 herein, but not before three (3) business days after ECF notification of Court approval of this settlement, respectively.

9. Plaintiff has agreed to accept LEVO's payments as follows:

a. the first payment will be made, on or before October 30, 2015, by one check in the amount of Five Thousand Nine Hundred Ninety Dollars and no cents ($5,990.00) payable to "Jacqueline Cepeda", for emotional distress damages, subject to IRS Form 1099; one check in the amount of Three Thousand Dollars ($3,000.00) and no cents, for lost wages, subject to IRS Form W-2; and one check in the amount of Six Thousand Ten Dollars and no cents ($6,010.00) payable to the "Law Office of Laurie E. Morrison as attorney for Ms. Cepeda", as and for attorneys' fees subject to IRS Form 1099;

b. the second payment will be made, on or before October 30, 2015, by one check in the amount of One Thousand Five Hundred Dollars and no cents ($1,500.00) payable to "Jacqueline Cepeda", for emotional distress damages, subject to IRS Form 1099; one check in the amount of One Thousand Five Hundred Dollars ($1,500.00) and no cents, for lost wages, subject to IRS Form W-2; and one check in the amount of Two Thousand Dollars and no cents ($2,000.00) payable to the "Law Office of Laurie E. Morrison as attorney for Ms. Cepeda", as and for attorneys' fees subject to IRS Form 1099;

c. the third payment will be made, on or before November 6, 2015, by one check in the amount of Three Thousand Dollars and no cents ($3,000.00) payable to "Jacqueline Cepeda", for emotional distress damages, subject to IRS Form 1099; one check in the amount of Three Thousand Dollars ($3,000.00) and no cents, for lost wages, subject to IRS Form W-2; and one check in the amount of Four Thousand Dollars and no cents ($4,000.00) payable to the "Law Office of Laurie E. Morrison as attorney for Ms. Cepeda", as and for attorneys' fees subject to IRS Form 1099; and

d. the fourth payment will be made, on or before December 1, 2015, by one check in the amount of Eight Thousand Dollars and no cents ($8,000.00) payable to "Jacqueline Cepeda", for emotional distress damages, subject to IRS Form 1099; one check in the amount of Ten Thousand Dollars ($10,000.00) and no cents, for lost wages, subject to IRS Form W-2; and one check in the amount of Twelve Thousand Dollars and no cents ($12,000.00) payable to the "Law Office of Laurie E. Morrison as attorney for Ms. Cepeda", as and for attorneys' fees subject to IRS Form 1099.

10. All payments shall be paid in accordance with the Agreement referenced herein.

11. It shall be an "Event of Default" of LEVO's settlement obligation hereunder, if LEVO fails to: (a) make either the First Payment, the Second Payment, the Third Payment, or the Fourth Payment by the agreed to deadlines and (b) cure such failure within fourteen (14) calendar days after receiving written notice of default (the "Cure Period"), sent by Federal Express to Martin Clearwater & Bell LLP, 220 East 42nd Street, New York, NY 10017 (Attention: Adam G. Guttell, Esq.), as attorneys for LEVO.

12. It shall be an "Automatic Event of Default" of LEVO's and my settlement obligation hereunder if: (a) any action or proceeding is commenced, either voluntarily or involuntarily, to: (i) declare or adjudge LEVO bankrupt; or (ii) dissolve and/or cease all or substantially all of the operations of LEVO; or (b) LEVO takes any steps or issues any notice that it is ceasing, or that it intends to cease, all or substantially all of its operations.

13. If LEVO and/or I do not cure the default within the Cure Period, then LEVO and I shall be liable for reasonable attorneys' fees, court costs and expenses incurred by Ms. Cepeda and/or her attorney to enforce payment as set forth in the Settlement Agreement. Additionally, if LEVO has not cured the default within the Cure Period, then Ms. Cepeda and her attorney shall be entitled to statutory interest on any payment not yet made by its due date. This term shall not apply to any payment not yet due.

14. Within ten (10) business days following receipt of the defendant LEVO's Fourth/Final Payment, Plaintiff will deliver the original of this Affidavit for Confession of Judgment to Martin Clearwater & Bell LLP, 220 East 42nd Street, New York, NY 10017 (Attention: Adam G. Guttell), as attorneys for LEVO and me.

15. I agree to execute any additional documents, supplements or modifications required by the Clerk of the Court in order to effectuate the filing of this Affidavit for Confession of Judgment.

By: CAROLINE GHOSN
Chief Executive Officer
The Levo League

Sworn to before me this
28 day of October , 2015

Sourichanh Chanthyasack
Notary Public

SOURICHANH CHANTHYASACK
Commission # 2051630
Notary Public - California
Marin County
My Comm. Expires Dec 13, 2017